## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 17-1450 |
| | ) | |
| **LAMAR RICE**, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

CONTI, Chief District Judge.

On November 27, 2017, a magistrate judge found there was probable cause for the arrest of defendant Lamar Rice ("defendant"), but determined he would be released from custody on an unsecured bond of $50,000.00 and subject to various conditions of release to ensure the safety of the community. (ECF Nos. 9-12.) The government appealed the decision of the magistrate judge. (ECF No. 8.) On December 4, 2017, this court held a hearing and conducted a de novo review of whether defendant should be detained pending trial. The court considered the transcript of the hearing held before the magistrate judge, the pleadings in this case, the pretrial services report prepared by the United States Probation and Pretrial Services Office (the "Pretrial Services Report"), and the arguments made and evidence presented by the parties at the hearing on December 4, 2017.

The undersigned judge affirmed in part and reversed in part the decision of the magistrate judge and ordered defendant be detained pending trial. The court explained that defendant did not satisfy his burden to set forth some evidence to rebut the presumption of detention with respect to the danger he poses to the community, and,

even if he had satisfied his burden, the government showed by clear and convincing evidence that he poses a risk of danger to the community, i.e., he is likely to engage in drug trafficking if released prior to trial. The court determined, however, that defendant rebutted the presumption that he is a risk of flight and the government did not satisfy its burden to show by a preponderance of the evidence that defendant is likely to flee if not detained pending trial. This opinion sets forth the reasons for the court's decision to detain defendant, which were detailed on the record.

## I.    Background

### A.    Procedural History

On November 16, 2017, John Balish, a special agent of the United States Department of Justice, Federal Bureau of Investigation ("FBI"), filed a criminal complaint accusing defendant of the following crimes: possession with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii); maintaining a drug involved premises, in violation of 21 U.S.C. § 856(a)(1); and possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.)

On November 27, 2017, a detention hearing was held before a magistrate judge. (ECF No. 9.) The magistrate judge determined that risk of flight was not an issue in the case and that defendant established that there was a condition or combination of conditions that could be imposed to reasonably assure the safety of the community upon his release from incarceration pending trial. The magistrate judge denied the government's request to detain defendant pending trial and ordered defendant's release on an unsecured bond of $50,000.00 with specified conditions.

On the same day, the government filed a notice of appeal of the magistrate judge's decision. (ECF No. 8.) On December 1, 2017, the government filed a brief in support of its appeal. (ECF No. 15.) Defendant did not file a brief in response. On December 4, 2017, the undersigned judge held a de novo hearing with respect to defendant's detention status. After reviewing the transcript of the November 30, 2017, detention hearing and the Pretrial Services Report submitted by the pretrial services officer, and taking into consideration the evidence and arguments presented by the parties at the hearing held on December 4, 2017, the court ordered defendant be detained pending trial.

## B.    Factual Background

At the detention hearing before the magistrate judge on November 27, 2017, the government presented the testimony of Lee Niebel ("Niebel"), a detective with the Port Authority of Allegheny County Police Department, who is assigned to the FBI Western Pennsylvania Opioid Task Force. (H.T. 11/27/2017 (ECF No. 14) at 3.) At the hearing held before the undersigned judge on December 4, 2017, the government presented additional testimony from Niebel, and defendant presented testimony from his aunt, Diane Williams ("defendant's aunt"), and uncle, Robert Williams ("defendant's uncle"). Based upon the record and the pretrial services report, the following factual background was developed.

### 1.  The crimes charged in the criminal complaint

Niebel was involved in the criminal investigation of defendant, which included executing search warrants on November 14, 2017, for defendant's person, his residence on Fourth Avenue in Pitcairn, Pennsylvania ("defendant's residence"), and

321 5th Avenue, McKeesport, Pennsylvania (the "McKeesport building"). (H.T. 11/27/2017 (ECF No. 14) at 3-4, 12-13.) At the time of the investigation, defendant had been convicted of at least one felony. (Id. at 26.) On November 14, 2017, law enforcement observed defendant leaving the McKeesport building and going to his residence. (Id. at 4.) Defendant was observed exiting the front door of his residence and walking down the side of the "breezeway." (Id. at 5.) Defendant was detained in the parking lot behind his house where his truck was parked. (Id.) Defendant did not attempt to flee or run from law enforcement. (Id. at 13.) The search warrant for defendant's person was executed in the parking lot. (Id.) Law enforcement recovered two sets of keys from defendant's person; one set for defendant's residence and one for the McKeesport building. (Id.)

In the basement of defendant's residence law enforcement found "a grow operation that had been torn down and put in boxes[,]" which included "lamps, PVC pipes, irrigation supplies, fertilizers, hydroponic sensors, ventilation duct and fans." (H.T. 11/27/2017 (ECF No. 14) at 5.) Law enforcement also found marijuana grow magazines and books and "receipts from Home Depot and high tech gardening stores for a lot of the equipment that was in the basement." (Id. at 6.) On the second floor of the residence, law enforcement found ammunition in a bedroom that was being utilized as a walk-in closet. (Id. at 6, 15.) Law enforcement did not find marijuana or contraband at defendant's residence. (Id. at 13-15.) Various documents were found in defendant's residence, (H.T. 12/4/2017 at 27), including the following: a "72-Hour Shut-Off Notice" for 315 5th Avenue 15132 dated September 10, 2016, (ex. 1; H.T. 12/4/2017 at 27-28);

and a Duquesne Light billing statement for 315 5th Avenue, McKeesport, Pennsylvania 15132 dated September 29, 2016, (ex. 2; H.T. 12/4/2017 at 29-30).

The McKeesport building is a large commercial-sized building, including approximately four floors, a basement, and a loading dock. (H.T. 11/27/2017 (ECF No. 14) at 7, 17.) Inside the McKeesport building were mailboxes, one of which had an address of 315 5th Avenue, McKeesport, Pennsylvania. (H.T. 12/4/2017 at 28, 29.) On either the third or fourth floor of the building, law enforcement found "50 gallon or 100-gallon water drums with pumps going and a bunch of tools…as well as fertilizer, grow chemicals and grow booklets." (H.T. 11/27/2017 (ECF No. 14) at 7, 22; H.T. 12/4/2017 at 18.)  On the same floor, there was a room with "plastic all on the inside or like a tent with lights, fans, power amps, and the plants growing." (Id. at 7-8.) There were "a lot of rooms prepped for growing[,]" and "probably five…with actually plants in them." (Id. at 8.) More than four hundred plants, which were in various stages of growth, were recovered from the McKeesport building. (Id. at 8, 22-23.) In the area of the McKeesport building where tools were stored, law enforcement found a pile of "Duquesne Light statements" for the McKeesport building. (H.T. 11/27/2017 (ECF No. 14) at 8.)

Also in the McKeesport building was a small room that was set up as an office. (Id.) On the table in the office was a piece of glass "with a bunch of white powder residue, some small knotted baggies of white powder suspected to be fentanyl." (Id.) Law enforcement also found in the office "[g]rinders, sifters, mannitol, which is commonly used to cut fentanyl, empty stamp bags, stamps, an Amazon box with a shopping label to" defendant, (id. at 9), and a "luggage check bag in…[defendant's] name[,]" (H.T. 12/4/2017 at 30). According to Niebel, who has been a narcotics officer

for "many years[,]" heroin and fentanyl are mixed together with the use of a blender or coffee grinder. (Id. at 43-44.) The Pennsylvania State Police clandestine lab was called to process the evidence found in the office. (H.T. 11/27/2017 (ECF No. 14) at 9.) A large amount of spent and unspent .22 caliber pistol or long rifle casings were found in the office and "bullet holes that would appear to be of the .22 caliber size" were found throughout the building. (Id. at 10.)

In an "open area" of the McKeesport building on the same floor as the grow operation, law enforcement found a "large wheeled toolbox filled with various power tools[,]…[a] couple large water, 55 gallon drums with pumps that were pumping to the plants, a torpedo heater and a composition notebook as well as…Duquesne Light statements and some other indicia." (H.T. 12/4/2017 at 30-31.) The following documents were recovered from the "open area:"

- a "Municipal Authority of Westmoreland County Certificate of Deposit" dated August 1, 2016, received from defendant "as security for payment of bills to be incurred for water service at 315 5th Avenue" dated August 1, 2016, (ex. 3; H.T. 12/4/2017 at 31);

- an envelope addressed to defendant at 315 5th Avenue, McKeesport, Pennsylvania, 15132 (ex. 4; H.T. 12/4/2017 at 32);

- a billing statement for account number "9811000" from the Municipal Authority of the City of McKeesport with a due date of July 6, 2017, (id.);

- a deposit slip from the Municipal Authority of the City of McKeesport for account number "M09811000" dated July 18, 2017, (id.);

- a "Notice of Insufficient Funds" from The Huntington National Bank addressed to "Rice Homes Inc [sic] 315 5th Ave [sic] McKeesport [sic] PA 15132" with a payment date of February 6, 2017, (ex. 5  H.T. 12/4/2017 at 32);

- a billing statement for sewage services from The Municipal Authority of the City of McKeesport for account number "M09811000" addressed to defendant at 315 5th Avenue, McKeesport, Pennsylvania 15132 with a due date of May 4, 2017, (ex. 6; H.T. 12/4/2017 at 32);

- a letter addressed to defendant at 315 5th Avenue, McKeesport, Pennsylvania 15132, from First Premier Bank, dated October 25, 2016, (ex. 7; H.T. 12/4/2017 at 33);

- a billing statement from the Municipal Authority of the City of McKeesport addressed to defendant at 315 Fifth Avenue, McKeesport, Pennsylvania 15132, with a due date of May 4, 2017, (ex. 8; H.T. 12/4/2017 at 33); and

- a piece of mail from The Huntington National Bank addressed to "Rice Homes Inc [sic] 315 5th Ave [sic] McKeesport [sic] PA [sic] 15132" (id.).

In the composition notebook law enforcement found five pages with handwritten notes about "[t]he whole marijuana grow operation, the feeding and whatnot of the plants." (Ex. 9; H.T. 12/4/2017 at 33-34.) The last page of the handwritten notes is dated October 2, 2012. (Ex. 10; H.T. 12/4/2017 at 41.) Other than the "grow operation" and office, the McKeesport building was "completely vacant." (H.T. 12/4/2017 at 29.)

A male approached law enforcement while they were at the McKeesport building. (H.T. 11/24/2017 (ECF No. 14) at 11.) The male said he was from a business across the street and "asked what was going on." (Id.) The law enforcement instructed him that "some police activity" was taking place. (Id.) The man told the law enforcement that the building was his "cousin's place." (Id.) The man said his cousin was Lamar Rice. (Id. at 11-12.)

### 2. Defendant's Personal Background

#### a. Personal Characteristics

Defendant was forty years old as of December 4, 2017, i.e., the date of the detention hearing before the undersigned judge. (Pretrial Services Report at 1.) According to the Pretrial Services Report, defendant is in good physical health, but has pain and stiffness in his back. (Id. at 3.) Defendant began using cannabinoids at the age of sixteen. (Id.) Defendant does not have a history of mental health issues. (Id.) Defendant reported he has lived in the Western District of Pennsylvania his entire life, and has lived at his residence in Pitcairn, Pennsylvania, for four years. (Pretrial Services Report at 2.) Defendant does not have a valid United States passport or driver's license and has never traveled outside the United States. (Id.)

### b. Familial Associations

Defendant has a daughter who is four years old and a son who is twenty-seven years old. (Pretrial Services Report at 2.) Defendant has a girlfriend, Julia George ("George"). (Id.) Defendant's daughter has cerebral palsy and is a spastic quadriplegic. (H.T. 12/4/2017 at 10-11.) She lives with her mother and on a daily basis attends the Children's Institute. (Id. at 15-16.) Defendant picks up his daughter from school when her mother is unable to do so. Defendant takes his daughter to his aunt's house, where they eat dinner, and then takes her to her mother's home at the end of the day. (Id. at 10.) Defendant works with his daughter on her speech, and physical skills. (Id. at 11.) Defendant takes his daughter to swim therapy, which she has been unable to attend since his incarceration. (Id. at 16.) While defendant's daughter can feed herself "finger foods," she requires assistance using utensils. (Id. at 13.) Defendant's daughter is unable to physically move herself or speak other than saying "mama." (Id. at 14.) Defendant physically carries her. (Id.) Defendant's daughter loves defendant. (Id.)

### c. Work History and Employment Prospects

Defendant reported to the pretrial services officer that from November 1, 2011, through June 1, 2017, he was employed by Home Health Staffing and earned $2,426.67 per month. (Pretrial Services Report at 2.) Defendant reported that beginning on June 15, 2017, and continuing until the time of his arrest, he was employed by R. Williams Construction and earned $1,820.00 per month. (Id.) R. Williams Construction, which is a general contracting business, is owned by defendant's uncle and has been in business since 2006. (H.T. 12/4/2017 at 18.)

Defendant's uncle could not identify when defendant began working for him. (Id.at 19.) Defendant's uncle testified that:

- defendant worked about twenty hours per week and earned $10 per hour, for a total of approximately $200 per week (id. at 24);

- defendant worked "on and off" for him for a total of eight months over the past two years (id. at 20);

- defendant "[p]icked up shingles, carried in drywall, went to Home Depot," and sketched for him (id. at 19-21);

- he could employ defendant every day if necessary (id. at 20); and

- "Rice Homes" is defendant's company. (Id.at 23.)

### d. Criminal History

On September 21, 1998, defendant—at the age of twenty—pleaded guilty to driving while suspended and making false reports to law enforcement at case number CP 2450-1998/F 206714-4. (Pretrial Services Report at 5.) He was sentenced to a term of probation of one year. (Id.)

On November 6, 2002, defendant—at the age of twenty-one—pleaded guilty to aggravated assault, firearms not to be carried without a license, possession of

9

marijuana, and resisting arrest at case number CP 15137-1998/G 035446-5. (Id. at 5.) He was sentenced to a term of imprisonment of fifteen to thirty months. (Id.) Defendant committed these offenses while on probation at case number CP 2450-1998/F 206714-4. (Id.)

On the same date, defendant pleaded guilty to resisting arrest at case number CP 18212-2001/G105550-4. (Pretrial Services Report at 6.) On November 6, 2006, defendant pleaded guilty to possession with intent to deliver a controlled substance, possession of a controlled substance, recklessly endangering another person, resisting arrest, and fleeing or attempting to elude at case number CR 683-2006/G307896-1. (Pretrial Services Report at 7.) Defendant was charged under the name "Cedria Banks" in both CP 15137-1998/G 035446-5, CP 18212-2001/G105550-4, and CR 683-2006/G307896-1. (Id. 6-7.)

On January 18, 2006, fines and costs were imposed upon defendant for disorderly conduct at case number CR 683-2006/G307896-1. (Id. at 7.)

On April 29, 2009, defendant pleaded guilty to driving under the influence: general impairment and driving without a license at case number CP 16666-2008/G441068, and was sentenced to seventy-two hours of incarceration. (Id. at 7-8.) These offenses were committed while defendant was on supervision with the Pennsylvania Board of Probation and Parole. (Id. at 8.)

On June 26, 2009, defendant pleaded guilty to driving under the influence and driving while operating privileges suspended or revoked. (Pretrial Services Report at 8.) Defendant was sentenced to a term of probation of three to six months. (Id.) These

offenses were committed while defendant was on supervision with the Pennsylvania Board of Probation and Parole. (Id. at 8.)

On February 23, 2017, defendant was charged by the Wilkinsburg Police Department with two counts of felony possession with intent to deliver a controlled substance, two counts of misdemeanor possession of a controlled substances, and driving while license suspended or revoked at CP 4083-2017/G768427-2. (Id. at 9.) He is currently on bond and those charges are pending. (Id.) During the execution of the search warrant of defendant's residence, Niebel found a criminal complaint for pending charges filed against defendant by the Wilkinsburg Police Department. (H.T. 12/4/2017 at 35-36.) Niebel testified as follows with respect to the details of the criminal complaint:

> The Wilkinsburg police along with the state attorney general's office were conducting a narcotics investigation where they received a tip that a black male named Lamar would be showing up to the Edwardtown shopping center in a certain type of car to deliver fentanyl or heroin, fentanyl and heroin.
> …
> They arrested Lamar Rice, they approached a male that was in the car and asked him if his name was Lamar. He said yes. They identified him and search subsequent to arrest, they located five bricks which came back from the Allegheny crime lab as fentanyl and heroin mixture.

(H.T. 12/4/2017 at 35-36.)

## II. Standard of Review

The court's standard of review of a magistrate judge's denial of pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

## III. Discussion

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated

before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

### A.  Rebuttable Presumption

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . ***(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)*** [or] (B) an offense under section 924(c), 956(a), or 2332b of this title[.]

18 U.S.C. § 3142(e)(3) (emphasis added). The magistrate judge found probable cause that defendant committed the offenses charged in the complaint. In the hearing before this court defendant did not contest that finding or the application of the rebuttable presumption. Defendant was charged with, among other crimes, possession with intent to distribute 100 or more marijuana plants, which is a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). (ECF No. 1.) The minimum term of imprisonment for the offense is five years and the maximum is forty years. 21 U.S.C. § 841(b)(1)(B)(vii). If, however, it

is defendant's second felony drug conviction that is final, the minimum term of imprisonment is ten years and the maximum is life. <u>Id.</u> Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e).

**B.    The § 3142(g) factors**

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g), which the court must consider in determining whether pretrial detention is warranted. <u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## C.      Danger to the Community

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence, the presumption does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam). Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986).

## 1. The nature and circumstances of the offense charged

The offense for which defendant is charged is a very serious drug offense involving the possession of a large amount of marijuana plants and carries with it a significant statutory mandatory minimum term of imprisonment dependent on

defendant's criminal history. Defendant in this case did not present evidence with respect to the first factor listed in § 3142, i.e., the nature and circumstances of the offense charged. This factor weighs in favor of defendant being detained pending trial.

### 2. The weight of the evidence against defendant

With respect to the second factor, i.e., the weight of the evidence against defendant, the government at the hearing before the undersigned judge presented additional evidence to strengthen its case against defendant. The government showed that law enforcement found documents at defendant's residence from Duquesne Light with respect to 315 5th Avenue, and there were deposit slips and bills addressed to defendant with respect to 315 5th Avenue found at the McKeesport Building. The evidence presented by the government shows that there are connections between defendant and the McKeesport building and probable cause exists for the offenses charged in the criminal complaint, but the evidence is not overwhelming. Under those circumstances, this factor is neutral if not tipping slightly in favor of defendant's release.

### 3. The history and characteristics of defendant

With respect to defendant's personal characteristics, he presented evidence that he has strong community ties to the Western District of Pennsylvania.[1] Defendant is a lifelong resident of the Western District of Pennsylvania. Defendant assists in the care for his daughter, e.g., he drives to pick her up from school, take her to his aunt's home, and then back to her mother's home at the end of the day. Defendant, however, has multiple convictions for driving under the influence and driving without a license or while

---

[1] Community ties have limited weight in the context of assessing whether a defendant presents a danger to the community. United States v. Delker, 757 F.2d 1390, 1396 (3d Cir. 1985).

operating privileges are suspended. Defendant currently does not possess a valid driver's license. Under those circumstances, the court gives less weight to defendant's need to provide care to his daughter, i.e., transport her by vehicle.

Defendant reported to the pretrial services officer that he earned $1,820 per month working for his uncle. His uncle testified, however, that defendant earned $200 per week, which totals approximately $800 per month. Defendant reported his monthly expenses are $1,185 per month and that he has a cash flow of $635 per month. Defendant did not point to any other source of income that would account for the $1,020 difference between his reported earnings, i.e., $1,820 per month, and the wages he earned from his uncle, i.e., approximately $800 per month. Defendant's girlfriend reported to the pretrial services officer that defendant was unemployed. Under those circumstances and in light of defendant's connections to the McKeesport building, i.e., a building in which a large amount of marijuana is being grown, the court concludes that defendant was untruthful with the pretrial services officer and the bulk of his income is likely earned by narcotics trafficking.

At the time defendant was arrested in this case, he was on pretrial release at case number CP 4083-2017/G768427-2 for an offense involving fentanyl and heroin, which were recovered from his person at the time of the arrest in that case.

Despite defendant's community and family ties, his untruthfulness to the pretrial services officer about the amount or sources of his income, his repeated convictions for driving under the influence or with a suspended license, and the fact that he was on pretrial release for a narcotics offense at the time he was arrested in this case causes this factor to weigh against his release pending trial.

**4. The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release**

With respect to the fourth factor, the court must consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. In other words, the court must *predict* whether defendant is likely to engage in drug trafficking if released pending trial. Perry, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior[,]" i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses."). "Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions." Id. at 114.

Although defendant's uncle testified that he would employ defendant full-time upon release, that opportunity was available to defendant prior to his arrest in this case and he did not take advantage of it. Defendant's untruthfulness with the pretrial services officer about the amount or sources of his income, his girlfriend's statement that he is unemployed, and his arrest in this case while on pretrial release for another narcotics offense lead the court to conclude that defendant would continue to engage in drug trafficking if released pending trial.

**5. Conclusion with respect to safety of the community**

Even if defendant rebutted the presumption of detention in this case, the government satisfied its burden to show by clear and convincing evidence that defendant would continue to engage in drug trafficking if released pending trial and there is no condition or combination of conditions that would ensure the safety of the community upon his release. While the weight of the evidence may tip slightly in favor of

defendant, the seriousness of the offense, the danger he poses to the community, and the presumption, which retains evidentiary weight, weigh in favor of detention. Under those circumstances, even if defendant had rebutted the § 3142(e) presumption, this court finds, after considering the record as a whole, that the government showed by clear and convincing evidence there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking while on release.

### D.    Risk of Flight

Assuming defendant satisfied his burden to set forth some evidence to rebut the presumption that he is a risk of flight, the government did not prove by a preponderance of the evidence—even considering the evidentiary weight of the presumption and the factors discussed above—that defendant is a risk of flight. "The purpose of a Section 3142(e) risk of flight determination...is to secure the appearance of the accused at trial." United States v. Himler, 797 F.2d 156, 161-62 (3d Cir.1986) (citing United States v. Maull, 773 F.2d 1479 (8th Cir. 1989) (risk of flight shown by prior attempt to leave the country in order to flee prosecution); United States v. Vortis, 785 F.2d 327 (D.C.Cir.1986) (risk of flight shown by possession of fraudulent passports and a planned trip to Liberia)). Although the government only needs to prove defendant is a risk of flight by a preponderance of the evidence, Himler, 797 F.2d at 161, the court concludes, after considering the record as a whole and the § 3142(g) factors, that the government did not establish that risk with respect to defendant in this case. Defendant used aliases and resisted arrest in the past, but there is no evidence that he fled or failed to attend court proceedings. He does not possess a passport and does not have a record of

international or interstate travel. Under those circumstances, the court cannot conclude that it is more likely than not that defendant would flee if released pending trial.

## IV. Conclusion

Even if defendant met his burden to rebut the presumption of detention that applies in this case, the government showed by clear and convincing evidence that he poses a risk of danger to the community, i.e., he is likely to engage in drug trafficking if released prior to trial, which cannot be mitigated by imposing conditions of release. Defendant did overcome the presumption with respect to risk of flight. The government, however, did not show that it is more likely than not that he will flee if released pending trial. In accordance with this opinion, the order of the magistrate judge will be affirmed in part and reversed in part.

An appropriate order will be entered.

BY THE COURT,

Dated: December 13, 2017

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge